UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------x
CHAKA VIRGIL,

                        Plaintiff,

              - against -

CITY OF NEW YORK, POLICE OFFICER
TINIA ALEXANDER SHIELD # 1093,
SERGEANT RAYNA MADHO SHIELD
# 4816, and UNIDENTIFIED NEW YORK
CITY POLICE OFFICERS, all sued herein in
their capacity as individuals,

                        Defendants.
---------------------------------------------------------x

**MEMORANDUM & ORDER**
17-CV-5100 (PKC) (SMG)

PAMELA K. CHEN, United States District Judge:

Plaintiff Chaka Virgil brings this action pursuant to 42 U.S.C. § 1983 against Defendants

New York City Police Department ("NYPD") Officer Tinina Alexander and Sergeant Rayna

Madho for false arrest, malicious prosecution, and denial of the right to a fair trial. Before the

Court is Defendants' motion for summary judgment. For the reasons stated below, Defendants'

motion is denied in its entirety.

## BACKGROUND

### I.      Relevant Facts[1]

On the afternoon of May 27, 2015, Plaintiff was walking from his home to 35 Pilling Street

with his friend "Jamal."[2] (Plaintiff's 56.1 Statement ("Pl.'s 56.1"), Dkt. 45, ¶ 8.) That day, Officer

---

[1] Unless otherwise noted, a standalone citation to a party's 56.1 Statement denotes that this
Court has deemed the underlying factual allegation undisputed. Any citation to a party's 56.1
Statement incorporates by reference the documents cited therein. Where relevant, however, the
Court may cite directly to the underlying document.

[2] Plaintiff refers to his friend as "Jamal," but does not remember his last name. (Deposition
of Plaintiff Chaka Virgil ("Pl.'s Dep."), Dkt. 41-3, at 26:25−27:1.)

Alexander and Sergeant Madho were assigned to the Special Narcotics Enforcement Unit ("SNEU") and were sitting in an unmarked NYPD car parked on Pilling Street, between Broadway and Bushwick Avenues in Brooklyn. (Defendants' 56.1 Statement ("Defs.' 56.1"), Dkt. 40, ¶¶ 4–5.) Sergeant Madho knows "that street [as] a heavy drug area." (Deposition of Rayna Madho ("Madho Dep."), Dkt. 41-4, at 27:11. *But see* Deposition of Tinina Alexander Deposition ("Alexander Dep."), Dkt. 41-5, at 27:20–24 (answering "No" to a question about whether the block Defendants were parked on had a lot of drug activity, and noting that "[j]ust because we were sitting on the block doesn't mean we were watching that block").) At that time, Officer Alexander had been with SNEU since 2013 or 2014. (Alexander Dep., Dkt. 41-5, at 80:10–14.) She was in the driver's seat and Sergeant Madho was in the front passenger seat of the vehicle. (Defs.' 56.1, Dkt. 40, ¶ 6.) The officers were wearing their police uniforms, except for their hats. (*Id.* ¶ 7.) As Plaintiff approached 35 Pilling Street, he noticed the police officers sitting in their unmarked vehicle. (Pl.'s Dep., Dkt. 41-3, at 40:9–17.) He greeted Abdul Pullium, Jamal's cousin and an "associate" of Plaintiff's, outside 35 Pilling Street with a handshake and a "half-hug." (Defs.' 56.1, Dkt. 40, ¶¶ 9–11.) Pullium's car was parked directly in front of Defendants' vehicle, blocking a fire hydrant. (*Id.* ¶ 20.)

The details of the subsequent events that took place are disputed. At deposition, Officer Alexander testified that she saw Plaintiff pass drugs to Pullium as they were shaking hands. (Alexander Dep., Dkt. 41-5, at 32:6–11.) She then told Sergeant Madho what she saw. (Defs.' 56.1, Dkt. 40, ¶ 13.) Madho did not see the drug exchange herself.[3] (Madho Dep., Dkt. 41-4, at

---

[3] There are several inconsistencies with Sergeant Madho's statements. When first asked whether she had observed the alleged drug transaction, she responded, "No." (Madho Dep., Dkt. 41-4, at 29:18–20.) She later testified that she witnessed the transaction, and that money was potentially exchanged. (*Id.* at 30:14–31:7.) Then, she testified that "Alexander saw the exchange

57:8–9.) Plaintiff, however, testified that his interaction with Pullium was limited to just a handshake and "half-hug" (Pl.'s Dep., Dkt. 41-3, 38:15–20), and that no drugs were exchanged between Plaintiff and Pullium (Pl.'s 56.1, Dkt. 45, ¶¶ 12–13). Neither Sergeant Madho nor Officer Alexander saw Plaintiff and Pullium exchange money. (Madho Dep, Dkt. 41-4, at 57:11–13; Alexander Dep., Dkt. 41-5, at 32:12–14.)

After greeting each other, Plaintiff, Pullium, and Jamal continued to talk for approximately 15 to 20 minutes. (Pl.'s 56.1, Dkt. 45, ¶¶ 41, 44; Pl.'s Dep., Dkt. 41-3, at 37:25–38:2.) Defendants contacted their SNEU team members and remained in the vehicle as they waited for back-up while Plaintiff, Jamal, and Pullium continued talking in front of 35 Pilling Street. (Defs.' 56.1, Dkt. 40, ¶¶ 14–16.) After several minutes, Plaintiff walked down the block, leaving Jamal and Pullium standing in front of 35 Pilling Street. (*Id.* ¶ 17.) As he was walking, Plaintiff saw a van with police officers driving down Pilling Street against traffic. (Pl.'s Dep., Dkt. 41-3, at 36:10–13.) Defendants got out of their vehicle and stopped Pullium. (Defs.' 56.1, Dkt. 40, ¶ 18.) Sergeant Madho testified both that she frisked Pullium and recovered an orange pill bottle from his pants pocket containing a small bag of marijuana (*id.* ¶ 19) and that Officer Alexander handed her the recovered pill bottle,[4] which Sergeant Madho placed in the back of Pullium's car prior to arresting and handcuffing Pullium.[5] (Madho Dep., Dkt. 41-4, at 50:24–51:4; Defendants' 56.1 Statement

---

of marijuana, I saw their bodies in front of me." (*Id.* at 56:8–10.) Finally, Sergeant Madho clarified that she "did not see the drug transaction." (*Id.* at 57:8–9.)

[4] Sergeant Madho's testimony implies that, at some point, the bottle was passed from her to Officer Alexander before Alexander passed it back to Madho, but there is no explicit testimony to that effect.

[5] Pullium testified that his car was unlocked with the windows rolled down. (Deposition of Abdel Pullium ("Pullium Dep."), Dkt. 46-2, at 29:9–11.)

Response ("Defs.' 56.1 Resp."), Dkt. 43, ¶ 55.) However, Plaintiff alleges that Defendants did not find any drugs on Pullium during the search and that the pill bottle passed from Officer Alexander to Sergeant Madho did not come from either Plaintiff or Pullium. (Pl.'s 56.1, Dkt. 45, ¶¶ 55, 57; *see also id.* ¶ 57 (noting that Sergeant Madho then "furtively" threw the pill bottle in the back of Pullium's car and that Defendants were "probably planting the drugs there").)[6] Pullium, in a deposition for his own civil action (Defs.' 56.1, Dkt. 40, ¶¶ 35–36), testified that Defendants did not find any drugs on him (Pullium Dep., Dkt. 46-2, at 42:15–24).

Plaintiff returned to 35 Pilling Street when he realized that he had forgotten his cellphone. (Pl.'s Dep., Dkt. 41-3, at 39:21–25.) He was then also stopped and detained by Defendants with his back against Pullium's vehicle. (Defs.' 56.1, Dkt. 40, ¶ 22.) Defendants did not recover any contraband from Plaintiff. (Defs.' 56.1 Resp., Dkt. 43, ¶ 55.) After Defendants' back-up team members arrived at the scene, Plaintiff and Pullium were handcuffed and arrested. (Defs.' 56.1, Dkt. 40, ¶¶ 23–25.)

Once Plaintiff was placed under arrest, he was transported to the NYPD's 83rd precinct and then Central Booking. (*Id.* ¶ 26.) Plaintiff was incarcerated for 18 hours and 43 minutes before being released on his own recognizance. (*Id.* ¶ 30.) Plaintiff was charged with criminal sale of marijuana in the fifth degree, criminal possession of marijuana in the fifth degree, and unlawful possession of marijuana, in violation of New York Penal Law §§ 221.35, 221.10, and 221.05, respectively. (Criminal Complaint, Dkt. 41-10.) The criminal charges against Plaintiff

---

[6] Both Plaintiff and Defendants provided a video ("the Video"), taken by Jamal, that memorializes part of the interaction between Pullium and Defendants, as well as between Defendants and Plaintiff. (Declaration of Aimee K. Lulich, Dkt. 41, ¶ 13; *see also* Video (Defs.' Ex. K), Dkt. 41-11; Video (Pl.'s Ex. 5), Dkt. 46-5.) However, the Video begins with Defendant Alexander already holding the pill bottle that Defendants allege was recovered from Pullium. (Video, Dkt. 41-11, at 0:00–0:11.) Therefore, the Video does not provide corroborating evidence for either Plaintiff or Defendants as to where the pill bottle came from.

were dismissed on October 22, 2015.  (Oct. 22, 2015 Criminal Transcript, Dkt. 46-6, at 1–2.)  The

state prosecutor stated that the "People are moving to dismiss.  We cannot prove the case beyond

a reasonable doubt." (*Id.* at 2.)

## II.    Procedural History

Plaintiff commenced this action on August 29, 2017.  (Complaint, Dkt. 1.)  He filed an

Amended Complaint on November 12, 2017.  (Amended Complaint, Dkt. 12.)  The parties entered

into discovery and attempted to settle their case without success.  (*See* Nov. 8, 2017 Minute Entry;

Aug. 8, 2018 Minute Entry.)  On August 31, 2018, Defendants sought leave to file a motion for

summary judgment.  (Defendants' pre-motion conference ("PMC") letter, Dkt. 33.)  In response,

Plaintiff dismissed, with prejudice, his illegal strip search and *Monell* claims.[7]  (Plaintiff's PMC

letter, Dkt. 34, at ECF[8] 1.)  On September 13, 2018, the Court granted Defendants leave to file

their summary judgment motion.  (Sept. 13, 2018 Docket Order.)  Defendants' motion was fully

briefed on November 23, 2018.  (*See* Dkts. 38–46.)

## LEGAL STANDARD

Summary judgment is appropriate where the submissions of the parties, taken together,

"show[] that there is no genuine dispute as to any material fact and the movant is entitled to

judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 251–52 (1986) (summary judgment inquiry is "whether the evidence presents a sufficient

disagreement to require submission to a jury or whether it is so one-sided that one party must

---

[7] Plaintiff's illegal strip search and *Monell* claims were the only claims against Defendants City of New York and Unidentified New York City Police Officers. (*See* Amended Complaint, Dkt. 12, ¶¶ 17, 40–51.) Accordingly, these Defendants are terminated from this action.

[8] Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

prevail as a matter of law"). A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

The initial burden of "establishing the absence of any genuine issue of material fact" rests with the moving party. *Zalaski v. City of Bridgeport Police Dep't*, 613 F.3d 336, 340 (2d Cir. 2010). Once this burden is met, however, the burden shifts to the nonmoving party to put forward some evidence establishing the existence of a question of fact that must be resolved at trial. *Spinelli v. City of New York*, 579 F.3d 160, 166–67 (2d Cir. 2009); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A mere "scintilla of evidence" in support of the nonmoving party is insufficient; "there must be evidence on which the jury could reasonably find for the [non-movant]." *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 743 (2d Cir. 2003) (quotation omitted; alteration in original). In other words, "[t]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (quotation omitted).

In determining whether a genuine issue of fact exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008). The Court also construes any disputed facts in the light most favorable to the nonmoving party. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157–59 (1970). However, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson*, 477 U.S. at 247–48.

## DISCUSSION

### I.    False Arrest

"A § 1983 claim for false arrest, resting on the Fourth Amendment right of an individual

to be free from unreasonable seizures, including arrest without probable cause, is substantially the same as a claim for false arrest under New York law." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (citations omitted); *see also Jenkins v. City of New York*, 478 F.3d 76, 84 (2d Cir. 2007) (citing *Weyant*, 101 F.3d at 852). To prevail on a claim of false arrest or unlawful imprisonment, a plaintiff must prove that "(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." *Savino v. City of New York*, 331 F.3d 63, 75 (2d Cir. 2003) (quotation and citation omitted). "'[T]he existence of probable cause' for an arrest 'is an absolute defense to a false arrest claim.'" *Dancy v. McGinley*, 843 F.3d 93, 107 (2d Cir. 2016) (quoting *Jaegly v. Couch*, 439 F.3d 149, 152 (2d Cir. 2006)).

Here, the only disputed issue with respect to Plaintiff's false arrest claim is whether there was probable cause for the arrest. (*See* Defendants' Memorandum of Law in Support ("Defs.' Br."), Dkt. 39, at 2.)

> Although the existence of probable cause must be determined with reference to the facts of each case, in general "[p]robable cause to arrest exists when the officers have knowledge of, or reasonably trustworthy information as to, facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested."

*Manganiello v. City of New York*, 612 F.3d 149, 161 (2d Cir. 2010) (quoting *Zellner v. Summerlin*, 494 F.3d 344, 368 (2d Cir. 2007)). The existence of probable cause "must be determined by reference to the totality of the circumstances," *id.*, and "may be determined as a matter of law provided there is no factual dispute regarding the pertinent events and the knowledge of the officers," *Jackson v. City of New York*, 939 F. Supp. 2d 235, 249 (E.D.N.Y. 2013).

Therefore, "the issue of probable cause is a question of law to be decided by the [C]ourt only where there is no real dispute as to the facts or the proper inferences to be drawn from such

facts." *Rounseville v. Zahl*, 13 F.3d 625, 630 (2d Cir. 1994) (quoting *Parkin v. Cornell Univ.*, 583 N.E.2d 939, 942 (N.Y. 1991)). When the question of whether probable cause existed is "predominantly factual in nature," it is appropriate for the jury to decide. *Barksdale v. Colavita*, 506 F. App'x 82, 84 (2d Cir. 2012) (summary order) (quotation and citation omitted); *see also Jeffreys v. City of New* York, 426 F.3d 549, 553–54 (2d Cir. 2005) ("Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment.") (quoting *Rule v. Brine, Inc*., 85 F.3d 1002, 1011 (2d Cir. 1996)). "Thus, if there is conflicting evidence that could support reasonable persons in drawing different inferences, then the question must be resolved by the jury." *Landers v. City of New York*, No. 16-CV-5176 (PKC) (CLP), 2019 WL 1317382, at *5 (E.D.N.Y. Mar. 22, 2019) (citing *Rounseville*, 13 F.3d at 630); *see also Murphy v. Lynn*, 118 F.3d 938, 947 (2d Cir. 1997) ("Where the question of whether an arresting officer had probable cause is predominantly factual in nature, as where there is a dispute as to the pertinent events, the existence *vel non* of probable cause is to be decided by the jury.").

Defendants argue that they had probable cause to arrest Plaintiff because (1) the events at issue took place in what Defendants describe as a "heavy drug area," (2) Officer Alexander's observation of the exchange of narcotics during Plaintiff's handshake with Pullium, (3) Officer Alexander's experience as a narcotics officer, and (4) the marijuana recovered from Pullium's pocket. (Defs.' Br., Dkt. 39, at 7–8.) Plaintiff disputes most of these facts. Specifically, Plaintiff has denied that any drug exchange occurred and asserts that his hand-to-hand contact with Pullium was merely a handshake and a "half-hug." (Pl.'s 56.1, Dkt. 45, ¶¶ 12–13.) Furthermore, Plaintiff also disputes, based on Pullium's deposition testimony, whether Defendants found any drug paraphernalia in Pullium's pockets. (*See id.* ¶ 19 (citing Pullium Dep., Dkt. 46-2, at 35:18–25,

36:1–15, 42:5–21).)

At this stage of the proceedings, the Court must resolve all factual discrepancies in Plaintiff's favor. *Perez v. Duran*, 962 F. Supp. 2d 533, 539 (S.D.N.Y. 2013); *see also Major League Baseball Props., Inc.*, 542 F.3d at 309; *Adickes*, 398 U.S. at 157–59. Accordingly, the Court must determine whether probable cause existed by relying on Plaintiff's assertions that Officer Alexander merely witnessed Plaintiff shake hands with Pullium in a drug-prone area.[9] These facts do not support a finding of probable cause to arrest. *See Perez*, 962 F. Supp. 2d at 538–39 ("Physical proximity to criminal behavior without more is insufficient to establish

---

[9] As described *supra*, there is also a factual dispute as to whether Defendants recovered drugs from Pullium when he was arrested, shortly after interacting with Plaintiff. (*See* Pl.'s 56.1, Dkt. 45, ¶ 19.) Plaintiff alleges that because no drugs were exchanged between Plaintiff and Pullium, the marijuana that Defendants claimed to have recovered from Pullium was likely "planted." (*Id.*) The Court does not find this fact to be material because even if it was undisputed that drugs were retrieved from Pullium, Defendants would still not have met their burden to show that probable cause existed as a matter of law. *See Perez*, 962 F. Supp. 2d at 539 (finding that probable cause did not exist at summary judgment "when an officer believes, based on the officer's observations and experience, that a drug transaction has occurred and the suspected buyer is later found to be in possession of illegal drugs"); *see also Berry v. Marchinkowski*, 137 F. Supp. 3d 495, 521–22 (S.D.N.Y. 2015) ("On a motion for summary judgment, a fact is material if it might affect the outcome of the suit under the governing law.") (quoting *Royal Crown Day Care LLC v. Dep't of Health & Mental Hygiene*, 746 F.3d 538, 544 (2d Cir. 2014)).

However, the Court does not agree that Plaintiff has failed to put this issue into dispute. Though Defendants are correct that a "[p]laintiff's unsupported, conclusory allegation that someone must have planted the evidence because there is no other way it could have gotten [there]," *Carlisle v. City of New York*, No. 05-CV-6825 (SAS), 2007 WL 998729, at *3 (S.D.N.Y. Apr. 2, 2007) is insufficient to create a dispute of material fact at summary judgment, Plaintiff's claim here is not unsubstantiated. Rather, he relies on the statement of a non-party who asserted, under oath, that Defendants did not recover any drugs from him after a search. (Pullium Dep., Dkt. 46-2, at 42:5–21.) The fact that Pullium has a personal investment in stating that Defendants did not find drugs on him, given that it would likely make Pullium's own arrest illegal, is a factor that weighs against Pullium's credibility. However, this is not a determination that the Court may make on summary judgment in deciding which version of events to rely on. *See Douglas v. City of New York*, 595 F. Supp. 2d 333, 347 (S.D.N.Y. 2009) ("[The defendants'] argument seems once again to be premised on the notion that the Court should simply accept defendants' version of events, something that . . . the Court cannot do.").

probable cause."). "[M]ere proximity to 'others independently suspected of criminal activity, does not, without more, give rise to probable cause.'" *Burgess v. City of New York*, No. 15-CV-5525 (RRM) (VMS), 2018 WL 1581971, at *3 (E.D.N.Y. Mar. 29, 2018) (quoting *Ybarra v. Illinois*, 444 U.S. 85, 91 (1979)). The fact that Plaintiff and Pullium were in a drug-prone area does not convert the otherwise innocent gesture of a handshake and a half-hug into a drug transaction.

Defendants' argument to the contrary is unavailing. Though Defendants state that "[c]ourts in the Second Circuit routinely find probable cause to arrest when an officer believes, based on his or her experience, that an individual is engaged in a hand-to-hand drug transaction," (Defs.' Br., Dkt. 39, at 8 (citing *Smith v. Tobon*, 529 F. App'x 36 (2d Cir. 2013) (summary order), *Morales v. Greiner*, 381 F.3d 47 (2d Cir. 2004), *United States v. Washington*, No. 02-CR-1574 (LTS), 2003 WL 21250681 (S.D.N.Y. May 29, 2003), and *Sam v. Brown*, No. 00-CV-4170 (JG), 2002 WL 31102644 (E.D.N.Y. Sept. 10, 2002))), the probable cause determination in these cases all rely on more than just Defendants' belief that a drug exchange occurred. For example, in *Smith*, the plaintiff "d[id] not meaningfully challenge the accuracy of any of the[] facts [supporting a probable cause determination]." *Smith*, 529 F. App'x at 39. In contrast, here, "the parties dispute whether an exchange–other than a handshake—occurred at all." *Perez*, 962 F. Supp. 2d at 539.

Likewise, Defendants' reliance on *Morales* and *Sam* is misplaced. In *Sam*, a police officer observed the exchange of an object for money with an alleged buyer, the buyer was later found to be in possession of narcotics, and the seller was found with money. 2002 WL 31102644, at *1. In contrast, here, Defendants both stated that they did not see an exchange of money. (Madho Dep., Dkt. 41-4, at 57:11–13; Alexander Dep., Dkt. 41-5, at 32:12–14.) In *Morales*, there was probable cause to arrest where an undercover officer observed the plaintiff touch hands with another individual. 381 F.3d at 47. However, the officer also observed the two individuals enter

a vestibule of a building, engage in a transaction, and quickly exit with one of the individuals holding a glassine envelope. *Id.* at 48. The totality of the circumstances, rather than a mere hand-to-hand interaction, justified the arrest. *Id.* Furthermore, both *Sam* and *Morales* examined the existence of probable cause in the context of a *habeas* proceeding, where a court is required to construe the facts in the light most favorable to the *state*. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see also Ponnapula v. Spitzer*, 297 F.3d 172, 179 (2d Cir. 2002) ("[W]e review the evidence in the light most favorable to the State and the applicant is entitled to habeas corpus relief only if no rational trier of fact could find proof of guilt beyond a reasonable doubt based on the evidence adduced at trial.") Of course, here, at summary judgment, the Court must construe facts in the opposite direction, in the light most favorable to Plaintiff.

Finally, Defendants' reliance on *United States v. Washington* is misleading, largely because it was a federal criminal matter, where the issue of probable cause was litigated before a district judge in a suppression hearing. There, officers observed a small item being exchanged for money and soon after recovered drugs from the buyer and a "large sum of money" from the seller. *Washington*, 2003 WL 21250681, at *1–2. Officers also recovered "bags of marijuana and bags of crack" from the seller's car shortly after his arrest. *Id.* at *2. Moreover, because the seller denied that he had engaged in a drug transaction, the court only made a probable cause determination after "observ[ing] the witnesses and weigh[ing] carefully their testimony [at the suppression hearing]." *Id.* The Court, of course, cannot make such credibility determinations at this stage in the proceedings. *Landers*, 2019 WL 1317382, at *9 ("Resolutions of credibility conflicts and choices between conflicting versions of the facts are matters for the jury, not for the court on summary judgment.").

Therefore, after drawing all reasonable inferences in Plaintiff's favor, the Court finds that

genuine disputes of material fact prevent it from determining that Defendants had probable cause to arrest Plaintiff. Accordingly, Defendants' motion for summary judgment as to Plaintiff's false arrest claim is denied.

## II. Malicious Prosecution

"In order to prevail on a § 1983 claim against a state actor for malicious prosecution, a plaintiff must show a violation of [his] rights under the Fourth Amendment, and must establish the elements of a malicious prosecution claim under state law." *Manganiello*, 612 F.3d at 160–61 (citations omitted). To state a malicious prosecution claim under New York law, "a plaintiff must prove (1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." *Id.* at 161 (quotations and citation omitted). "A claim for malicious prosecution under section 1983 requires the additional element of '(5) a sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights.'" *Perez*, 962 F. Supp. 2d at 540 (quoting *Rohman v. N.Y.C. Transit Auth. (NYCTA)*, 215 F.3d 208, 215 (2d Cir. 2000)).

Defendants argue that Plaintiff's malicious prosecution claim fails because Defendants did not initiate Plaintiff's prosecution, Plaintiff's prosecution was not terminated in his favor,[10] there was probable cause to initiate Plaintiff's prosecution, and there is no evidence that Defendants

---

[10] In their original motion, served on October 19, 2018, Defendants conceded that Plaintiff's prosecution had been terminated favorably. (Defs.' Br., Dkt. 39, at 9.) However, on November 7, 2018, the Second Circuit clarified the standard for a favorable termination, holding that "affirmative indications of innocence [are required] to establish 'favorable termination.'" *Lanning v. City of Glens Falls*, 908 F.3d 19, 25 (2d Cir. 2018). Given the intervening clarification in the law, the Court considers Defendants' argument, first raised in their reply brief, that Plaintiff cannot demonstrate that his criminal proceeding was terminated favorably.

acted with malice. (Defs.' Br., Dkt. 39, at 9–10; Defs.' Reply Brief, Dkt. 42, at ECF 5.) The Court addresses each argument in turn.

## A. Defendants initiated Plaintiff's prosecution

Defendants argue that Officer Alexander's communication of her observations to the District Attorney's Office, who then proceeded to make an independent decision to prosecute Plaintiff, does not qualify as initiating a criminal proceeding against Plaintiff. (Defs.' Br., Dkt. 39, at 11–12.) "Once a criminal defendant has been formally charged, the chain of causation between the officer's conduct and the claim of malicious prosecution is broken by the intervening actions of the prosecutor, thereby abolishing the officer's responsibility for the prosecution." *Williams v. City of New York*, No. 02-CV-3693 (CBM), 2003 WL 22434151, at *6 (S.D.N.Y Oct. 23, 2003). However, "[i]n a situation where a police officer is accused of providing false information to a prosecutor that influences a decision whether to prosecute, he may be held liable for malicious prosecution." *Douglas*, 595 F. Supp. 2d at 342 (quotation and citation omitted); *see also Myers v. Cty. of Nassau*, 825 F. Supp. 2d 359, 367 (E.D.N.Y. 2011) ("However, an arresting officer may nonetheless be liable pursuant to a malicious prosecution theory if it can be shown that the officer has knowingly created false information that creates the basis for the prosecution.") (citing, *inter alia*, *Jocks v. Tavernier*, 316 F.3d 128, 138 (2d Cir.2003); *Ricciuti v. N. Y. C. Transit Auth.*, 124 F.3d 123, 130–31 (2d Cir.1997)).

It appears that the only evidence of Defendants' involvement in Plaintiff's prosecution is a criminal complaint sworn to by Officer Alexander. (*See generally* Criminal Complaint, Dkt. 41-10.) In this complaint, Officer Alexander states that she "observed [Plaintiff] hand Abdul [Pullium] . . . a ziplock of mari[j]uana which was visible to passer-bys" and then "observed [Pullium] place said ziplock of mari[j]uana into [Pullium]'s pants pocket." (*Id.*) The complaint

also states that "[Officer Alexander] is informed by Sergeant Rayna Madho . . . that [Madho] recovered one ziplock of mari[j]uana from Pullium's pants pocket." (*Id.*) Plaintiff disputes that Officer Alexander witnessed a drug exchange or that Sergeant Madho recovered drugs from Pullium. If a jury credits Plaintiff's version of events, they could reasonably conclude that Defendants did not actually see a drug exchange between Plaintiff and Pullium, but chose to provide false information to the prosecutor about what occurred on May 27, 2015 via Officer Alexander's sworn criminal complaint. In other words, "if a jury credits [P]laintiff's testimony, it could reasonably conclude that [D]efendants initiated a proceeding against him." *Douglas*, 595 F. Supp. 2d at 342; *see Burgess*, 2018 WL 1581971, at *5 ("Because [the plaintiff] alleges that the defendants falsified their reports by claiming to witness a drug deal, this case falls under [the initiation] exception, and the police officers are proper defendants [to a malicious prosecution claim].")"; *McKenzie v. City of New York*, No. 17-CV-4899 (PAE), 2019 WL 3288267, at *15 (S.D.N.Y. July 22, 2019) (holding that a jury could find that signing a criminal complaint is sufficient to demonstrate that defendant officers initiated a criminal proceeding); *see also Zahrey v. Coffey*, 221 F.3d 342, 352 (2d Cir. 2000) ("[I]t is not readily apparent why the chain of causation should be considered broken where the initial wrongdoer can reasonably foresee that his misconduct will contribute to an 'independent' decision that results in a deprivation of liberty.").

### B.    Plaintiff's criminal proceeding was terminated in his favor

Defendants also argue that, in the wake of the Second Circuit's decision in *Lanning v. City of Glen Falls*, Plaintiff cannot show that his criminal proceeding was terminated in his favor. "It is the plaintiff's burden to demonstrate that [the] charges against him were terminated favorably." *Lazaratos v. Ruiz*, No. 00-CV-2221 (BSJ), 2003 WL 22283832, at *3 (S.D.N.Y. Sept. 30, 2003). "[T]he 'favorable termination' element of a federal malicious prosecution claim requires

'affirmative indications of innocence.'" *Blount v. City of New York*, No. 15-CV-5599 (PKC) (JO), 2019 WL 1050994, at *2 (E.D.N.Y. Mar. 5, 2019) (quoting *Lanning*, 908 F.3d at 25). "The answer to whether termination is indicative of innocence depends on the nature and circumstances of the termination; the dispositive inquiry is whether the failure to proceed impl[ies] a lack of reasonable grounds for prosecution." *Murphy*, 118 F.3d at 948 (internal quotations and citation omitted).

Plaintiff's criminal proceeding, based on his May 27, 2015 arrest, was dismissed on the district attorney's motion because "[the People] cannot prove the case beyond a reasonable doubt." (Oct. 22, 2015 Criminal Transcript, Dkt. 46-6, at 2.) Defendants argue that this statement is insufficient to show that the circumstances related to the termination indicate innocence. (Defs.' Reply Br., Dkt. 42, at ECF 5.) The Court disagrees.

Prior to *Lanning*, a dismissal based on an inability to prove a case beyond a reasonable doubt was sufficient to satisfy the favorable termination prong. *See Lawson v. New York Billiards Corp.*, 331 F. Supp. 2d 121, 131 (E.D.N.Y. 2004) ("[T]he termination was in [the plaintiff's] favor and was not inconsistent with his innocence" when, in the state court proceeding, "the Assistant District Attorney stated to the trial court that 'the People move to dismiss the case. We cannot prove it beyond a reasonable doubt.'"); *Stampf v. Long Island R.R. Co.*, 761 F.3d 192, 200 (2d Cir. 2014) (finding plaintiff's case was favorably terminated when the district attorney declined prosecution after concluding "that the case cannot be proven beyond a reasonable doubt"). These cases were decided based on the standard requiring only that the termination was not inconsistent with innocence. *See, e.g.*, *Stampf*, 761 F.3d at 200–01 (explicitly relying on New York state law, which only required finding that the termination was not inconsistent with innocence) (citing, *inter alia*, *Smith-Hunter v. Harvey*, 734 N.E.2d 750, 755 (N.Y. 2000); *Cantalino v. Danner*, 754 N.E.2d 391, 392 (N.Y. 2001)).

Since *Lawson* and *Stampf*, the Second Circuit has clarified in *Lanning* that a § 1983 malicious prosecution claim requires "affirmative indications of innocence to establish 'favorable termination' . . . , regardless of developments in New York State malicious prosecution law." *Lanning*, 908 F.3d at 25; *see also id.* (noting that New York state law only requires that the final termination of a criminal proceeding not be inconsistent with a plaintiff's innocence). Even though post-*Lanning*, "the bar to demonstrate favorable termination is higher" for a § 1983 malicious prosecution action, *McKenzie*, 2019 WL 3288267, at *15, the Court finds that a termination on the ground that the prosecution is unable to prove its case beyond a reasonable doubt is still sufficient to show favorable termination. Here, the prosecutor's statement that it could not prove the charges beyond a reasonable doubt goes to the sufficiency of the evidence against Plaintiff. Given that "a lack of sufficient evidence in a criminal case entitles a defendant, as a matter of law, to a judgment of acquittal," *id.*, such a dismissal is more than one that "leaves the question of guilt or innocence unanswered," *Lanning*, 908 F.3d at 28. Rather, the state is explicitly stating that it cannot overcome the presumption of innocence afforded to Plaintiff. Without sufficient evidence, Plaintiff reverts back to his presumptive state of innocence. Therefore, the Court finds that post-*Lanning*, a dismissal based on the state's express inability to prove its case beyond a reasonable doubt is sufficient to show a favorable termination for a § 1983 malicious prosecution claim.

### C.    There is a material factual dispute as to whether probable cause existed

Defendants also argue that Plaintiff's malicious prosecution claim fails because there was probable cause to support the initiation of the criminal proceeding. (Defs.' Br., Dkt. 39, at 10.) As with false arrest, "the existence of probable cause is a complete defense to a claim of malicious prosecution." *Savino*, 331 F.3d at 72. Defendants' argument for probable cause relies on the same facts they cited in support of their argument against the false arrest claim. (*See* Defs.' Br., Dkt.

39, at 10 ("For the reasons discussed in Part I [false arrest analysis], *supra*, there was probable cause to arrest [P]laintiff for unlawful possession of mari[j]uana and/or criminal sale of mari[j]uana.").)  However, given that there is a factual dispute as to whether probable cause existed to arrest Plaintiff, as described *supra*, and Defendants offer no additional evidence to support a finding of probable cause to initiate criminal proceedings against Plaintiff, the Court finds that there are disputed issues of material fact relating to Defendants' probable cause defense to Plaintiff's malicious prosecution claim as well.  *Perez*, 962 F. Supp. 2d at 540 ("[T]here are issues of fact as to whether there was probable cause to arrest the plaintiff, and therefore, there are issues of fact as to whether there was probable cause to commence the criminal proceedings against the plaintiff."); *cf. Johnson v. Constantellis*, 221 F. App'x 48, 50 (2d Cir. 2007) (summary order) ("If probable cause existed at the time of arrest, it continues to exist at the time of prosecution unless undermined 'by the discovery of some intervening fact.'") (quoting *Kinzer v. Jackson*, 316 F.3d 139, 144 (2d Cir. 2003)).

### D.     There is a material factual dispute as to whether Defendants acted with malice

Defendants argue that the Plaintiff's malicious prosecution claim also fails because there is no evidence to support an inference that Defendants acted with malice.  (Defs.' Br., Dkt. 39, at 12.)  "Malice does not have to be actual spite or hatred, but means only 'that the defendant must have commenced the criminal proceeding due to a wrong or improper motive, something other than a desire to see the ends of justice served.'"  *Perez*, 962 F. Supp. 2d at 540 (quoting *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 573 (2d Cir.1996)).  "A lack of probable cause generally creates an inference of malice."  *Boyd v. City of New York*, 336 F.3d 72, 78 (2d Cir. 2003).

Defendants cannot rely on the existence of probable cause to argue that there is no evidence of malice, given the Court's finding that this fact remains in dispute.  *See Boyd*, 336 F.3d at 78

("Once we find an issue of material fact as to probable cause, the element of malice also becomes an issue of material fact as well."); *see also Douglas*, 595 F. Supp. 2d at 342–43 (collecting cases). Construing the evidence in the light most favorable to Plaintiff, a reasonable jury could find that Defendants provided false information, via Officer Alexander's criminal complaint, and that this information provided the basis for Plaintiff's prosecution. These facts, if found by the jury, would be sufficient to find that Defendants acted with malice for purposes of a malicious prosecution claim. *See Perez*, 962 F. Supp. 2d at 541.

\* \* \*

Accordingly, Defendants' motion for summary judgment on Plaintiff's malicious prosecution claim is denied.

## III. Right to Fair Trial

To prevail on a right-to-fair-trial claim brought under § 1983, a plaintiff must demonstrate that "an (1) investigating official (2) fabricate[d] evidence (3) that [was] likely to influence a jury's decision,[11] (4) forward[ed] that information to prosecutors, and (5) the plaintiff suffer[ed] a deprivation of liberty as a result." *Jovanovic v. City of New York*, 486 F. App'x 149, 152 (2d Cir. 2012) (summary order) (citing *Jocks*, 316 F.3d at 138); *see Ricciuti*, 124 F.3d at 130 ("When a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused's constitutional right to a fair trial, and the harm occasioned by such an unconscionable action is redressable in an action for damages under 42

---

[11] "The Second Circuit has permitted a claim under § 1983 for violation of the right to a fair trial to proceed even where no trial took place." *Douglas*, 595 F. Supp. 2d at 346 (discussing *Ricciuti*, 124 F.3d 123, where the Second Circuit found summary judgment inappropriate on a right to fair trial claim where the criminal charges against plaintiff were dismissed before trial); *see also Aguirre v. City of New York*, No. 15-CV-6043 (PKC), 2017 WL 4236552, at \*10 & n.14 (E.D.N.Y. Sept. 22, 2017) (noting that there is some disagreement among courts in the Circuit on this issue).

U.S.C. § 1983.").

Defendants argue that Plaintiff's fair trial claim fails because "[Plaintiff's] uncorroborated and fanciful allegations of planted evidence are insufficient to sustain a claim of fabrication of evidence." (Defs.' Br., Dkt. 39, at 13.) Defendants construe Plaintiff's claim too narrowly. Setting aside Plaintiff's claim that the marijuana allegedly found on Pullium was planted, there still remains a genuine issue of material fact as to whether Officer Alexander provided the prosecution with the false information, regarding her observation of a drug transaction between Plaintiff and Pullium, that served as the basis for Plaintiff's prosecution. *See Perez*, 962 F. Supp. 2d at 543 (collecting cases); *see also id.* at 544 ("Construing the evidence in the light most favorable to the plaintiff for purposes of this motion, the evidence indicates that the defendant could not have observed the plaintiff exchange crack cocaine for money . . . because no such exchange occurred, and therefore, the defendant must have provided false information to the prosecutor when the defendant provided his arrest report and sworn complaint.").

Furthermore, returning to Defendants' argument that Plaintiff's allegation that Defendants "planted evidence" on Pullium is insufficient to support a false trial claim, the Court finds Defendants' argument unpersuasive. As discussed *supra* n.9, Plaintiff's claim is not unsubstantiated: he relies on the sworn testimony of a third-party, Pullium, who states that Defendants did not recover drugs from him after a search. (*See* Pl.'s 56.1, Dkt. 45, ¶ 19 (citing Pullium Dep., Dkt. 46-2, at 35:18–25, 36:1–15, 42:5–21).) That Pullium's testimony might be self-serving is a credibility issue to be determined by a jury at trial. *See Douglas*, 595 F. Supp. 2d at 347; *Landers*, 2019 WL 1317382, at *5. The Court therefore finds that there are questions of fact that need to be decided by a jury in order to resolve Plaintiff's fair trial claim. Accordingly, Defendants' motion for summary judgment on this claim is denied.

**IV. Qualified Immunity**

Finally, Defendants argue that they are entitled to qualified immunity because "it was not unreasonable for the defendant officers to believe there was probable cause to arrest and prosecute plaintiff . . . ." (Defs.' Br., Dkt. 39, at 14.)  Even if probable cause is lacking in a given case, an officer "will still be entitled to qualified immunity . . . if he can establish that there was 'arguable probable cause' to arrest." *Zalaski v. City of Hartford*, 723 F.3d 382, 390 (2d Cir. 2013) (quotation and citation omitted).  "Arguable probable cause exists if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004) (quoting *Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir. 1991)).  "The test is not toothless, however: 'If officers of reasonable competence would have to agree that the information possessed by the officer at the time of arrest did not add up to probable cause, the fact that it came close does not immunize the officer.'" *Ackerson v. City of White Plains*, 702 F.3d 15, 21 (2d Cir. 2012) (quoting *Jenkins*, 478 F.3d at 87); *see also Jenkins*, 478 F.3d at 87 ("'Arguable' probable cause should not be misunderstood to mean 'almost' probable cause.").

"Although immunity is usually an issue for the court, where the facts are disputed, 'jury consideration is normally required.'" *Douglas*, 595 F. Supp. 2d at 341 (quoting *Oliveira v. Mayer*, 23 F.3d 642, 649 (2d Cir. 1994)); *see also Weyant*, 101 F.3d at 852 ("The question of whether or not probable cause existed may be determinable as a matter of law if there is no dispute as to the pertinent events and the knowledge of the officers or may require a trial if the facts are in dispute."). "Here, the probable cause and arguable probable cause analyses rise or fall together, because the facts relating to what Plaintiff actually did . . . and what Defendants actually saw Plaintiff do . . . are still in dispute." *Landers*, 2019 WL 1317382, at *10.  If a reasonable jury were to credit

Plaintiff's version of events, then Defendants' actions would be objectively unreasonable. *See Perez*, 962 F. Supp. 2d. at 545 ("It is objectively unreasonable for an officer to believe that there was probable cause to arrest an alleged drug seller on the basis of a handshake and later recovery of drugs from an alleged drug buyer.").

Accordingly, Defendants' motion for summary judgment on the basis of qualified immunity is denied.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is denied in its entirety. However, based on Plaintiff's voluntary withdrawal of his illegal strip search and *Monell* claims in response to the motion, Defendant City of New York and all Unidentified New York City Police Officers are terminated as parties to this action. Parties shall file a joint pre-trial order within thirty (30) days of the date of this Order.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: September 27, 2019
          Brooklyn, New York